UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAYMOND CAMACHO a.k.a JESUS MENDOZA-NUNEZ,<br><br>　　　　Defendant. | Case No. 1:11-cr-00298-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Raymond Camacho a.k.a. Jesus Menodoza-Nunez's Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(A) (Dkt. 413). The Government opposes the motion. For the reasons set forth below, the Court will deny the motion.

# BACKGROUND

Raymond Camacho pled guilty to possession with intent to distribute a controlled substance after he was arrested driving a car with over 50 grams of methamphetamine hidden in the car. Camacho was one of seven defendants charged in a methamphetamine distribution conspiracy. As noted in the Sentencing Recommendation, Camacho "moved to Idaho in September of 2011 to live with codefendant Jose Rios-Jimenez and immediately began selling methamphetamine." *Recommendation*, p. 2, Dkt. 328. "He was the main supplier of methamphetamine to the codefendants in this case who then distributed the methamphetamine to others." *Id.* When Camacho was arrested on November 24, 2011, he was in possession of 2.7

pounds of methamphetamine and 2.2 pounds of cocaine. *Id.*

Prior to the arrest for this offense, Camacho already had an extensive criminal history. He has prior felony criminal convictions for Forgery; Sale of a Controlled Substance; Felon in Possession of a Firearm (twice); Assault with a Handgun; Transportation of a Controlled Substance-Armed with Firearm; and Deported Alien Found in the United States (twice). *Recommendation*, p. 2, Dkt. 328. At the time he committed the offense for which he is currently incarcerated, he was on supervision for Deported Alien Found in the United States.

The Court recognized the serious nature of Camacho's conduct in the drug conspiracy, as well as his long criminal history, in sentencing him to serve 360 months in prison. *Judgment*, Dkt. 342. His sentence was later reduced to 291 months by stipulation pursuant to 18 U.S.C. § 3582(c)(2). Camacho has approximately 10 years remaining to serve before his expected release date, which is August 17, 2032. Camacho moves this Court to reduce his sentence to time served and to release him back to his native country of Mexico, where he will not be supervised.

**LEGAL STANDARD**

To grant compassionate release under 18 U.S.C. 3582(c)(1)(A), a district court must, as a threshold matter, determine whether a defendant has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). If the exhaustion requirement is met, the Court may grant compassionate release only if the defendant shows that "extraordinary and compelling reasons warrant such a reduction," and the Court concludes that the 18 U.S.C. § 3553(a) sentencing factors do not weigh against such release. *Id.*; s*ee United States v. Keller*, 2 F.4th 1278, 1283-84 (9th Cir. 2021) (citing *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021)); *see also United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019). The defendant bears the burden of establishing that extraordinary and compelling reasons exist to justify compassionate release. *See United States v.*

*Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)).

## ANALYSIS

1. **Camacho Has Fulfilled the Exhaustion Requirement.**

To exhaust his administrative remedies, an inmate must request that the BOP make a motion for compassionate release on his behalf and show either (1) the inmate has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf, or (2) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)).

Camacho has provided evidence that he exhausted his administrative remedies by requesting that the Warden file a motion for compassionate relief on his behalf, timely appealing from the Warden's decision refusing to do so. (Dkt. 413-1, Def. Exs. 1-2). Accordingly, the Court finds that Camacho has exhausted his administrative remedies.

2. **Camacho Has Not Demonstrated Extraordinary and Compelling Circumstances.**

Having determined that Camacho has exhausted his administrative remedies, the Court must next consider whether "extraordinary and compelling reasons" warrant a permanent reduction in his sentence, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). As noted, Camacho bears the burden of establishing that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 452 F. Supp. 3d 964, 969 (D. Or. Apr. 6, 2020).

Before passage of the First Step Act, the Sentencing Commission limited "extraordinary

and compelling reasons" to four scenarios: (A) medical conditions of the defendant; (B) age of the defendant; (C) certain family circumstances; and (D) as determined by the Director of the BOP, other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 Application Note 1.

The Sentencing Commission, however, "never harmonized its policy statements with the FSA." *Rodriguez*, 424 F. Supp. 3d at 680 (quoting *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019)). "Rather, the outdated policy statements still assume compassionate release 'may be granted only upon motion by the Director of the Bureau of Prisons.'" *Brown*, 411 F. Supp. 3d at 449 (quoting U.S.S.G. § 1B1.13 Application Note 1). This assumption is no longer consistent with the law under the FSA, which allows defendants to seek relief directly from the court. For this reason, the question of whether district courts are strictly bound by the Sentencing Commission's statements in U.S.S.G. § 1B1.13 when considering prisoners' motions for compassionate release—as they are when considering motions by the Director of the BOP—was momentarily left open. The Ninth Circuit has recently answered that question in the negative. *See United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (holding that "the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant."). Therefore, the guidelines in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.*

Here, Camacho contends that his health conditions make him more vulnerable and susceptible to COVID-19 and thus constitute extraordinary and compelling circumstances justifying compassionate release from incarceration. He also suggests that his rehabilitation efforts are extraordinary and compelling circumstances justifying compassionate release.

A. **Health Conditions**

Camacho has been diagnosed with adult-onset, Type 2 Diabetes and Obesity (BMI 30). *See* Dkt. 413-1. He has also contracted COVID-19 twice—the first time in December 2020, and the second time in January 2022. According to Camacho, he has received two doses of the COVID-19 vaccination – although he does not specify which vaccine he received. He contends that he became seriously ill when infected with COVID-19, and continues to suffer from the effects of those infections. Camacho also has had eye surgery and at least two hernia surgeries.

As an initial matter, the Court notes that Camacho's age and some of his medical conditions likely do place him at a higher risk of contracting a severe form of COVID-19. The CDC lists type 1 and type 2 diabetes as underlying health conditions that can place individuals at an increased risk of severe illness from COVID-19.[1] However, the government argues, and the Court agrees, that Camacho's vaccination status and prior recovery from COVID-19 without hospitalization weighs heavily against a finding of extraordinary and compelling circumstances.

Camacho maintains that he has received two doses of the COVID-19 vaccine, as well as a booster. Camacho's risk of serious illness if he is reinfected again is therefore significantly decreased due to his vaccination status. According to the CDC, "COVID-19 vaccines are working well to prevent severe illness, hospitalization, and death."[2] Also, Camacho contracted and recovered from two prior COVID-19 infections without additional hospitalization. "Getting a COVID-19 vaccine after having COVID-19 provides added protection against the virus that

---

[1] CDC Updates, People with Certain Medical Conditions, (Updated December 14, 2021) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[2] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed March 3, 2023).

causes COVID-19." [3] *See United States v. Pavao-Kaaekuahiwi*, 2020 WL 7700097, at *3 (D. Haw. Dec. 28, 2020); *United States v. Andrews*, 2020 WL 7714708, at *4 (D. Nev. Dec. 29, 2020). Having both recovered from COVID-19 and having apparently received two doses of the vaccine, Camacho is likely at a decreased risk of severe complications from a reinfection of COVID-19. In fact, recovering from COVID-19 without additional hospitalization or severe complications suggests that Camacho would likely recover similarly if exposed to COVID-19 again.

In sum, although the Court recognizes that some of Camacho's medical conditions may put him at a somewhat increased risk of exacerbated symptoms should he contract COVID-19 again, these conditions do not constitute extraordinary and compelling circumstances warranting compassionate release.

### B.      Rehabilitation Efforts

Camacho also contends that his rehabilitation efforts are an extraordinary and compelling circumstance warranting compassionate release. In support, he has submitted evidence that, since he has been incarcerated, he has:

- Completed over 3,000 hours studying for his G.E.D.
- Completed an apprenticeship in house keeping and janitorial service.
- Attended and participated in drug and alcohol treatment programs.
- Continuing to participate specialized training and vocational training, including in electrical and carpentry.

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect.html (last accessed March 3, 2023).

Memorandum Decision and Order - 6

- Completed multiple education, vocational, and life and work skills courses.

While the Court acknowledges and appreciates Camacho's significant rehabilitation efforts, and strongly encourages him to continue these efforts, the Court does not find these rehabilitation efforts, on their own or in combination with Camacho's health conditions, sufficient to render his circumstances extraordinary and compelling.

**3. Camacho has not shown that the § 3553(a) factors weigh in favor of release.**

The Court also finds that the 18 U.S.C. § 3553(a) sentencing factors weigh against compassionate release. As outlined in the Presentence Investigation Report and the Sentencing Recommendation, Camacho was the main supplier in a drug conspiracy involving seven defendants, and at the time of his arrest he was in possession of over a kilogram of methamphetamine and a kilogram of cocaine. There is no indication that he intended to discontinue his illegal behavior without police intervention, and, in fact, he sought to withdraw his guilty plea and refused to accept responsibility for his conduct despite his own allocution and the evidence amassed against him, including statements of his codefendants.

Under *Pepper v. United States*, 562 U.S. 476, 490-93 (2011), the Court must consider post-offense developments—such as evidence of rehabilitation and medical conditions—in its § 3553(a) calculus. As discussed above, the Court recognizes that Camacho has some medical conditions that may exacerbate his risk if he is reinfected with COVID-19. The Court also recognizes that Camacho has engaged in significant rehabilitation efforts during his approximately 11 years of incarceration, and that these efforts may help to diminish somewhat the risk of recidivism and the risk to "the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

However, the Court does not find these medical conditions and rehabilitation efforts

sufficient to overcome other § 3553(a) factors. For example, Camacho has not demonstrated how his release now, after he has served only 11 years of the 30-year sentence, would reflect the seriousness of his offense, promote respect for the law, or provide just punishment for his offense. See 18 U.S.C. § 3553(a)(2)(A). Nor has he demonstrated how his release would "afford adequate deterrence to criminal conduct." See § 3553(a)(2)(B).

## ORDER

**IT IS ORDERED that** Raymond Camacho a.k.a. Jesus Menodoza-Nunez's Motion for Compassionate Release under 18 U.S.C. 3582(c)(1)(A) (Dkt. 413) is **DENIED.**

DATED: March 3, 2023

_____
B. Lynn Winmill
U.S. District Court Judge

Memorandum Decision and Order - 8